[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE' MOTION FOR RELIEF FROM AUTOMATIC ORDERS
Presently before the court is a dissolution action filed by the plaintiff Helen Acquarulo against the defendant, Dominic J. Acquarulo, Sr.[1] Dominic has filed a motion for relief from automatic orders. Specifically, the defendant seeks relief from Practice Book § 25-5 which prohibits the selling, transferring, encumbering or assigning of any property held by the parties to a dissolution action.[2]
Prior to the present dissolution action, Dominic was divorced from Rosalie in 1989. A separation agreement between Rosalie and CT Page 15104 Dominic was incorporated into the dissolution. The paragraph of that agreement that raises the issue in the present divorce action is as follows: "The Husband shall pay to the Wife the sum of $100,000.00 payable as follows:
 $40,000.00 on or before June 7, 1989 $15,000.00 on or before May 8, 1990 $15,000.00 on or before May 8, 1991 $15,000.00 on or before May 8, 1992 $15,000.00 on or before May 8, 1993
 Said sum shall be secured by a mortgage on the Husband's interest in 76 State Street, North Haven, Connecticut or other sufficient security."
On August 13, 1999, Rosalie filed a post judgment motion for contempt in her case against Dominic claiming that to date Dominic has paid her only $3,000, that, therefore he owes her $97,000 on the judgment, and that he has failed to secure the debt as required by the separation agreement. Thus, by filing the Motion for Relief from the automatic orders in his case with Helen, Dominic seeks permission to make available to Rosalie $97,000 of the assets secured by these automatic orders for possible distribution to Helen.
Helen has filed a memorandum in opposition to Dominic's request for relief from the automatic stay. One ground of the opposition challenges the validity of Rosalee's claim for $97,000.
The purpose of the automatic orders in dissolution cases can be gleaned from the minutes of the committee relative to the adoption of the family rules. The minutes reflect what is set forth in the official commentary. The official commentary for Practice Book § 25-5 (formerly § 1204) states that "[t]his rule, which is based on the automatic orders presently used in a number of states, is proposed to assist families in transition in maintaining, to the greatest extent possible, the status quo at the commencement of an action for dissolution of marriage. It allows for normal business and home expenditures and for the maintenance of insurances without further court order. It also orders parenting education and sets an early case management date. It is contemplated that stipulation for case management concerning, among other things, discovery and experts, will be reported to the court in many cases by a form to be developed by CT Page 15105 the Office of the Chief Court Administrator. Nothing in this section precludes a party from seeking criminal or civil relief in addition to the dissolution action. The rule provides for a hearing to address due process issues and requires counsel to include the automatic orders within the complaint." Procedures in Family Matters, Connecticut Law Journal, Vol. 58, No. 46 (May 13, 1997)[3]. In summary, the purpose of the rules is to maintain the status quo at the commencement of a dissolution to assist families in transition while allowing for home expenditures and maintenance of insurance policies in effect.
To date, neither the Connecticut Supreme Court nor the Appellate court has addressed the automatic order provision of the Rules of Court. Research did not disclose any other Superior Court decisions dealing with a court order suspending the automatic orders for the purpose of allowing one of the parties to pay a debt to a former spouse.
The court held two hearings on the matters presently at issue. At the first hearing on September 28, 1999, this court made the finding " . . . that the automatic orders are designed to preserve the parties rights for distribution determined in the action in which these orders are entered and to protect the assets from waste. . . . The orders are not designed to insulate the assets from satisfying or securing a prior order of this very Court. And for that reason, the Court grants the order for relief from automatic stay to the extent of being available to satisfy or secure it's prior order." (Hearing Transcript p. 8.) In addition, the court noted that it could not ignore the fact that the file in the case of Helen and Dominic contains a hand written exhibit prepared by Dominic entitled "balance sheet." The court allowed a copy of that document to be put into the file of Rosalie and Dominic. The balance sheet, dated December 16, 1996, includes assets and liabilities. One of the liabilities listed on the balance sheet is $47,000 owed to "Rose" Acquarulo. Both Rosalie and Dominic agree that the amount owed is $97,000 despite the balance sheet amount. At the conclusion of the September 28, 1999 hearing, this court issued an order allowing Dominic to liquidate his assets in the amount of $47,000 because there is no question that $47,000 of the dissolution judgment is still outstanding. The court further ordered that the $47,000 be held in trust.
The court notes that the financial affidavit of Dominic dated January 19, 1999, in the case of Helen and Dominic, shows that CT Page 15106 Dominic owes Rosalie $97,000. The dispute over the amount for which the automatic orders should be waived, stems from a real estate transaction between Rosalie, Dominic and William Esposito (Esposito). According to the testimony of Dominic, approximately two months after the May 8, 1989 dissolution judgment entered Rosalie raised some concern regarding their children and her desire to have Dominic leave something to his children in his will. At the time of this discussion Dominic was a part owner in a piece of property located at 76 State Street. Dominic's partner on 76 State Street was Esposito.
The financial affidavit of Dominic dated May 8, 1989, sets forth an estimated value of $400,000 for the State Street property with a mortgage of $150,000 leaving Dominic with $125,000 in equity as a fifty-percent owner. If Dominic and Esposito owned equal interests in the property as indicated by the testimony of Dominic, Esposito would also possess $125,000 in equity in State Street property. Rosalie was a partner with Esposito and another person on a piece or property located at 186 Exchange Street which had an estimated value of approximately $120,000.[4]
To resolve Rosalie's concern for the children, Dominic proposed that Rosalie transfer her share of Exchange Street to Esposito for $1.00 and in return Esposito could transfer his share of the State Street property to Dominic for $1.00. The end result would be that Dominic would own 100% of the State Street property making it available to him to leave in his will for his children.[5] As a result of the exchange, Dominic would owe Rosalie an additional $40,000 beyond the $97,000 already outstanding because the "swap" between Esposito and Dominic required Rosalie giving up her share of Exchange Street. Dominic testified that he paid Rosalie $43,000 leaving $97,000 of the divorce settlement still due and owing. Originally, Dominic thought his payment of $43,000 was toward paying Rosalie what he owed her pursuant to the divorce judgment and he also claims that he deducted an additional $10,000 from the $97,000 because he continued to pay Rosalie's health insurance beyond the time required by the dissolution judgment. Thus, his testimony indicated that in his mind he owed Rosalie only $47,000 of the dissolution judgment and that is why his balance sheet of December 31, 1996 reflects a debt to Rosalie in the amount of $47,000.
At some point in time Dominic claims that he spoke to Rosalie CT Page 15107 about the $10,000 deduction and her response was that she could have asked for interest on the judgment but did not and as a result, she did not accept his deduction as payment on the judgment and would insist on interest if that was Dominic's position. After reviewing the testimony about the transactions, one could conclude that Dominic thought that he was making payments on the dissolution judgment when in fact he owed Rosalie an additional $40,000 for her share of the Exchange Street property.
Giving due consideration to the purpose of the automatic orders, the unique set of circumstances presented by this case, and the special relationship of the three people involved here, the court concludes that Helen, as the person having automatic orders in this case protecting her financial interest, should be able to question Rosalie and Dominic fully in her case, and to present any evidence relevant on the issues presented by Dominic's Motion for Relief from automatic Orders. This can be accomplished at a continued hearing on Dominic's motion for relief from the automatic orders. Counsel may request that such a hearing be scheduled by the Clerk.
Clarance J. Jones, Judge